IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHAVONYA D. MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV474 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Shavonya Mason ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed applications for Supplemental Security Income and Child's Insurance Benefits on August 26, 2014, alleging a disability onset date of July 1, 2006. (Tr. at 16, 371-88.)[2] Her applications were denied initially (Tr. at 96-126), and that decision was upheld upon reconsideration (Tr. at 127-200). Thereafter, Plaintiff requested an administrative hearing de

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

novo before an Administrative Law Judge ("ALJ"). (Tr. at 273-78.) Plaintiff first appeared at a hearing on August 28, 2017, but upon the advice of her attorney, she requested a continuance. Plaintiff appeared at her continued hearing on December 6, 2017, along with her attorney and an impartial vocational expert. Because Plaintiff chose to amend her alleged onset date to August 26, 2014, which was the date of her SSI application, she voluntarily withdrew her request for a hearing on her claim for Child's Insurance Benefits. Accordingly, the ALJ dismissed that claim, and both the ALJ's decision and the findings of this Court pertain solely to Plaintiff's SSI claim. (Tr. at 16-17.)

Following the December 2017 hearing, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. (Tr. at 16-27.) On February 28, 2019, the Appeals Council denied review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

2

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her application date. Plaintiff therefore met her burden at step one of the sequential evaluation process. (Tr. at 19.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> HIV (undetectable); asthma; migraine headaches; a history of carpal tunnel syndrome; obesity; anxiety; [and] depression[.]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

(Tr. at 19.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19-21.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work, but with the following additional limitations:

> [Plaintiff] can perform frequent, but not continuous, handling and fingering bilaterally. She can frequently, but not continuously, have exposure to pulmonary irritants such as dust, fumes, odors, and gases. [Plaintiff] can perform simple and routine tasks involving few work place changes and no fast paced or production rate work. She can have occasional interaction with the general public and coworkers, and can maintain concentration, persistence or pace for at least 2 hours at [a] time.

(Tr. at 21.) At step four of the analysis, the ALJ found that Plaintiff had no past relevant work. (Tr. at 25.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27.)

Plaintiff now raises several challenges the ALJ's decision. She first contends that the ALJ erred in several respects when assessing her RFC. Specifically, she asserts that the ALJ failed to properly weigh the opinion of Plaintiff's treating psychologist, Dr. Robert Rominger, and that substantial evidence fails to support the ALJ's findings regarding Plaintiff's mental RFC, including that she "could occasionally work with the public and be with co-workers all day." (Pl.'s Br. [Doc. #12] at 1, 17.) Plaintiff also contends that substantial evidence fails to support the ALJ's step three decision that Plaintiff did not meet Listings 12.04 or 12.06.

6

For the reasons set out below, the Court concludes that remand is necessary regarding the mental RFC, particularly with regard to Plaintiff's social limitations. The Court therefore need not reach Plaintiff's alternative contentions.

"RFC is a measurement of the most a claimant can do despite [the claimant's] limitations" and "is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms." Hines, 453 F.3d at 562-63. With respect to the RFC determination in the present case, including with respect to the opinion evidence, Plaintiff notes that the psychiatric consultative examiner, Dr. Stephen Sanders, concluded that Plaintiff "experiences difficulty being around people due to her anxiety, panic disorder, and would have difficulty tolerating the stress and pressure associated with day-to-day work activity due to ongoing problems with depression and panic symptoms." (Pl.'s Br. at 4, Tr. at 1630.) Plaintiff further points to the treatment notes and opinion of Plaintiff's treating psychologist Dr. Robert Rominger, particularly with respect to Plaintiff's inability to be around and interact with other people. (Pl.'s Br. at 2-7, Tr. at 914-15, 982-83, 991-92, 1488-89, 1690-91, 1704-05, 1722-23, 1728-29, 1829, 1994-95, 1998-99, 2010-12.) With respect to the mental RFC, the ALJ's decision explained that

> [Plaintiff's] main concerns appear to revolve around her mental impairments of anxiety and depression. However, the evidence does not support functional limitations that would preclude regular and continuous work involving simple and routine tasks with few workplaces changes and <u>occasional interaction with the public</u>."

(Tr. at 23 (emphasis added).) Likewise, the ALJ's hypothetical to the Vocational Expert reflected limitations to "simple, routine tasks", "a non-production pace" and "<u>occasional interaction with the general public</u>." (Tr. at 72.) As noted above, Plaintiff challenges the ALJ's

7

Case 1:19-cv-00474-WO-JEP   Document 19   Filed 09/03/20   Page 7 of 13

findings that Plaintiff "could occasionally work with the public and be with co-workers all day." (Pl.'s Br. at 1, 17.)

However, in considering Plaintiff's contention that substantial evidence fails to support the ALJ's finding that she could "be with co-workers all day," the Court notes that the RFC that was actually adopted by the ALJ limits Plaintiff to only "occasional interaction with the general public and coworkers." (Tr. at 21.) Thus, there is inconsistency in the ALJ's discussion and formulation of the RFC to the extent that the ALJ's explanation contemplates limits only with respect to the general public, and even more importantly, the hypothetical question to the vocational expert also included limits only with respect to the general public. In other words, the RFC adopted by the ALJ limited Plaintiff to "occasional interaction with the general public and coworkers," but the ALJ's explanation and the questions to the vocational expert only reflected the limitation to "occasional interaction with the general public." This inconsistency makes it difficult to determine whether, as Plaintiff contends, substantial evidence fails to support the RFC, and in particular whether the ALJ failed to sufficiently account for the evidence regarding Plaintiff's social limitations. Even more importantly, this inconsistency means that the ALJ never presented the vocational expert with a hypothetical question that included all of the limitations actually adopted in the RFC.

As discussed above, the claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could

8

perform consistent with her RFC, age, education, and past work experience. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The ALJ may utilize a vocational expert at steps four and five of the sequential evaluation process to assist in determining whether there is work available which this particular claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hammond v. Apfel, 5 F. App'x 101, 105 (4th Cir. 2001); see also 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 404.1566(e). However, "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out <u>all</u> of claimant's impairments." Hines, 453 F.3d at 566 (emphasis added) (alteration and internal quotation marks omitted). Walker, 889 F.2d at 50-51; see also Mickles v. Shalala, 29 F.3d 918, 929 n. 7 (4th Cir. 1994) (finding no error where "all of the exertional and non-exertional limitations which the ALJ found to exist . . . were included in the hypothetical"); Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006) (finding no error where the RFC is supported by substantial evidence and the hypothetical question to the vocational expert incorporated that RFC determination).

Here, Plaintiff's mental RFC included a restriction to "occasional interaction with the general public <u>and coworkers</u>." (Tr. at 21.) However, the hypothetical question presented to the vocational expert only included a limitation to "interaction with the general public"; the ALJ communicated no restrictions involving coworkers. (Tr. at 72.) Specifically, the ALJ articulated the hypothetical as follows:

> Q. . . . So, let me move on then to hypothetical questions. Hypothetical questions; the first one is regarding a hypothetical individual as a younger individual, with limited education and no past relevant work; can perform work at the medium exertional level; can frequently but not constantly handle and

9

> finger bilaterally; and a frequent, not constant exposure to pulmonary irritants such as dust, fumes, odors and gases. She is limited to simple, routine tasks; can adapt to few work place changes or routine changes; can perform at a non-production pace so no fast-paced production rate work and <u>can have occasional interaction with the general public</u>. Can such an individual perform any – are there any jobs in the national economy such an individual could perform?

(Tr. at 72.) After the vocational expert identified various options, the ALJ next asked the vocational expert to consider the impact of a restriction to "rare interaction with the general public, meaning less than 1/3 of the day." (Tr. at 73.) The ALJ further clarified she was thinking of positions "working in the back," "so you're really not dealing with the public." (Tr. at 74.) The expert replied that this would eliminate some jobs and reduce the number of positions available for others by approximately fifty percent. (Tr. at 73-75.) The only mention of coworkers came from Plaintiff's attorney, who asked the vocational expert if the jobs previously identified in the <u>Dictionary of Occupational Titles</u> would "require interaction with coworkers and supervisors," to which the expert answered, "Yes." (Tr. at 76-77.) Plaintiff's attorney followed up by asking, "[I]f the hypothetical Claimant was unable to interact appropriately with coworkers and supervisors, would there still be these jobs?" (Tr. at 77.) The expert answered, "No." (Tr. at 77.) Thus, the evidence shows that the jobs identified at step five all require some degree of interaction with coworkers, but the degree of interaction is never defined. While it is possible that some, or even all, of the jobs identified by the vocational expert would remain if the limitation to occasional interaction with coworkers was added, the record, absent testimony to that effect, contains no evidence supporting such a finding.

Defendant contends that the ALJ reasonably concluded Plaintiff could perform other work by "[r]elying on the testimony of a vocational expert who considered Plaintiff's

10

established limitations." (Def. Br. [Doc. #15] at 2.) However, because the vocational expert's opinion was not made in response to a proper hypothetical question fairly setting out all of the claimant's limitations, it does not provide substantial evidence to support the ALJ's ultimate determination at step five. Walker, 889 F.2d at 50–51 ("In this case the ALJ did not ask questions that ensured that the vocational expert knew what the claimant's abilities and limitations were. Therefore, his answers to those questions were not particularly useful."); see also, e.g., Straughn v. Colvin, No. 1:14CV200, 2015 WL 4414275, at *4 (M.D.N.C. July 20, 2015) ("Because the ALJ in the present case did not specify to the vocational expert that Plaintiff was limited to simple, routine tasks, the expert may have identified jobs, even unskilled jobs, that he would not have identified had he been presented with a complete hypothetical question."); Chinault v. Colvin, No. 7:13-CV-00126, 2014 WL 1599480, at *4 (W.D. Va. Apr. 21, 2014) (remanding where "the ALJ . . . relied on the VE's testimony in response to a hypothetical that did not contain the sit or stand at will limitation ultimately included in the ALJ's RFC"); Teeter v. Astrue, No. 3:12-CV-190-GCM, 2012 WL 5405531, at *2 (W.D.N.C. Nov. 6, 2012) (remanding case when "the hypothetical posed to the VE did not include all of the limitations as found by the ALJ"); Finlay v. Astrue, Civil No. SAG-10-2020, 2012 WL 5267084, at *3 (D. Md. Oct. 19, 2012) ("[T]his Court cannot determine on the current record whether the hypothetical and the RFC are in fact inconsistent."); Elliot v. Astrue, Civil No. 2:09cv037, 2011 WL 2506335, at *4 (W.D.N.C. June 22, 2011) (remanding

11

where "[t]he VE, therefore, provided testimony regarding the jobs available for a person with fewer limitations than Plaintiff").[5]

Thus, as to Plaintiff's contention that she could not meet the social demands of the positions identified by the vocational expert, there is no evidence from the vocational expert that the identified positions could be performed by an individual with a limitation to only occasional interactions with coworkers, which is the RFC actually adopted by the ALJ. There is no need to consider whether the evidence would support some other RFC, since the Court considers the RFC actually adopted by the ALJ. Here, the RFC actually adopted by the ALJ included a limitation to only occasional interaction with coworkers, and that limitation was not included in the hypothetical question to the vocational expert. Thus, substantial evidence does not support the ALJ's conclusion that Plaintiff can perform other jobs available in significant numbers in the national economy, and remand is required. Riley v. Chater, 57 F.3d 1067, 1995 WL 361483, at *3 (4th Cir. June 16, 1995) (finding that a vocational expert's testimony that was "based on hypothetical questions that did not encompass all relevant

---

[5] The Court further notes that the ALJ's formulation of the hypothetical to the vocational expert included other discrepancies as well. For example, in terms of physical limitations, the ALJ limited Plaintiff to "frequent, but not continuous, handling and fingering bilaterally." (Tr. at 21.) Nevertheless, two of three jobs identified by the vocational expert and relied upon by the ALJ, namely hand packager and kitchen helper, require constant handling, and the job of hand packager also requires constant fingering. See DOT 920.587-018, 1991 WL 687916 (hand packager); DOT 318.687-010, 1991 WL 672755 (kitchen helper). Accordingly, absent explanation of this conflict, these two jobs are eliminated as potential positions for Plaintiff, regardless of her additional mental restrictions. See Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015).

    The remaining job, industrial cleaner, is described in the DOT as involving dust removal and the use of cleaning chemicals and incinerators. DOT 381.687-018, 1991 WL 673258. The DOT does not directly address the issue of pulmonary irritants, and the vocational expert never mentions the impact of Plaintiff's asthma and her need for limited exposure to "pulmonary irritants such as dust, fumes, odors, and gases" on her ability to perform any of the identified jobs, including that of industrial cleaner. (See Tr. at 23, 72-78.) When later asked whether his testimony was consistent with the DOT, the vocational expert identified the impact of breaks, being off task, and absenteeism as the only relevant areas not covered by the DOT, and for which he based his testimony on his education and training instead. (Tr. at 76.) In terms of pulmonary limitations, however, the Court is again left guessing as to the basis, if any, for the expert's testimony.

Case 1:19-cv-00474-WO-JEP   Document 19   Filed 09/03/20   Page 12 of 13

impairments, does not constitute substantial evidence to support the ALJ's decision"). To the extent that Plaintiff's additional allegations merit further consideration, these contentions can be considered by the ALJ upon rehearing.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further consideration of Plaintiff's claim in light of the above recommendation. Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED to the extent set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, her Motion is DENIED.

This, the 3rd day of September, 2020.

                                                                                            /s/ Joi Elizabeth Peake
                                                                              United States Magistrate Judge

---

[6] As noted above, Plaintiff contends that the ALJ failed to give appropriate weight to the opinion of her treating psychologist and the opinion of the psychiatric consultative examiner. (Pl.'s Br. at 9, 11-17, Tr. at 24-25.) In addition, Plaintiff notes that the ALJ relied on several inaccurate statements in making her credibility determination. For example, the ALJ relied on the fact that Plaintiff "recently flew to Atlanta to visit friends" (Tr. at 20), when in fact Plaintiff testified that she rode to Atlanta in a car with one friend who was driving. In addition, the ALJ discounted Plaintiff's credibility because she "admitted to past drug use at the hearing" after having denied drug use to her treatment providers. (Tr. at 24.) However, Plaintiff did not admit to past drug use at the hearing, and in fact consistently denied any past or present drug use. (Pl.'s Br. at 14-15.) Similarly, the ALJ gave little weight to Dr. Rominger's opinion in part because it "was not prepared for disability but rather for [Plaintiff's] probations officer." (Tr. at 24.) However, Dr. Rominger's statement was actually prepared for her disability claim, not for her probation officer, as confirmed by counsel who obtained the statement from Dr. Rominger. (Pl.'s Br. at 12-13, Tr. at 2010.) Finally, with respect to the ALJ's findings regarding Plaintiff's activities of daily living, Plaintiff notes that her parental rights to all of her children have been terminated by the state. (Pl.'s Br. at 2, Tr. at 915, 922.) All of these issues can be further addressed and considered in light of the remand in this case, as set out above.

13